OPINION
This appeal is brought by plaintiff-appellant Diana Luginbihl from the judgment of the Court of Common Pleas, Allen County, granting summary judgment to defendant-appellee, Milcor Limited Partnership.
The record presents the following facts. Appellee Milcor Limited Partnership, hereinafter Milcor, operates a manufacturing plant in Lima, Ohio which employs approximately 300 people. Employees at the Lima plant work in a heavily industrialized setting and engage in the fabrication of metal heating registers, access doors, and other stamped metal products. Plant employees are represented by the Shopmen's Local Union No. 778 of the International Association of Bridge, Structural, Ornamental, and Reinforcing Ironworkers, hereinafter the Union. Milcor and the Union are parties to a collective bargaining agreement (CBA) which governs the terms and conditions of employment at the Lima plant.
Among other things, the CBA establishes various job classifications available to employees at the Lima plant. Each job classification falls into one of six wage groups. All of the job classifications, excepting those in "Wage Group Six" are "bid jobs," meaning that an employee can only obtain the job through a job bidding process in which seniority plays a key role. A "bid job" is posted when the job becomes vacant. "Group Six" positions, also known as "General Assembly" are not bid jobs, but rather are entry level positions and involve a wide range of tasks taking place in various positions throughout the plant. A General Assembly employee's job duty and job location can vary from week to week depending on the needs of management. Also relevant to this matter is that the CBA contains a standard grievance and arbitration provision providing that all disputed matters between an employee and management are handled according to a very specific procedure which ultimately culminates in binding arbitration.
Appellant Dana Luginbihl began working at Milcor's Lima manufacturing plant in September, 1995 in the position of General Assembler. In February, 1998 Luginbihl suffered an injury to her spine while performing duties within the scope of her employment at Milcor. After a brief absence, she returned to work and successfully bid into the job of "Press Operator." However, Luginbihl's injuries continued to cause her pain. In May, 1999 Luginbihl began a year-long medical leave of absence from Milcor in order to undergo treatment, including surgery, for her condition. Luginbihl received worker's compensation benefits during this period.
On February 28, 2000, Luginbihl's treating physician evaluated her condition and concluded that she had reached "maximum medical improvement," and that she was capable of working in a sedentary position and at light workload levels. On March 30, 2000 Luginbihl presented Milcor with a work restriction slip setting forth the following restrictions: "No repetitive bending/lifting, no prolonged static standing/shifting. No lift 30#." Luginbihl requested that Milcor place her in a General Assembly position rather than her old "Press Operator" position since she could no longer use the foot operated machinery.
On April 12, 2000 Milcor informed Luginbihl and the Union that the company had no work available that met the restrictions imposed by Luginbihl's physician. In response, Luginbihl filed a grievance with the Union in accordance with the relevant portions of the CBA. Milcor denied the grievance, again restating its position that it had no work that coincided with her work restrictions. On May 15, 2000, Luginbihl's one year medical leave of absence expired and she was terminated.
On September 6, 2000 Luginbihl filed suit in the Allen County Court of Common Pleas alleging that Milcor terminated her because she was disabled in violation of R.C. 4112. The complaint, amended by stipulation on May 11, 2001 sets out three causes of action; (1) Milcor failed to accommodate her handicap; (2) Milcor wrongfully terminated her in violation of R.C. 4112; and (3) Milcor wrongfully terminated her in violation of public policy.
Milcor moved for Summary Judgment on October 1, 2001 on four theories; (1) Luginbihl failed to set out a prima facie case for handicap discrimination in violation of R.C. 4112.02; (2) As a union member, Luginbihl was precluded from bringing a common law wrongful discharge claim; (3) Federal Labor Law precluded Luginbihl's claims; and (4) Luginbihl's claims were precluded by the grievance and arbitration clause contained in the CBA between Milcor and the Union. The trial court rejected Milcor's argument's that Federal labor law precluded Luginbihl's claim and further held that Luginbihl had in fact established a prima facie case for discriminatory discharge under both R.C. 4112.02 and the common law. However, in a judgment entry dated November 13, 2001 the trial court granted Milcor summary judgment on the theory that since Luginbihl was party to a CBA which contained a provision for arbitration, R.C. 4112.14(C) precluded her from bringing the claims. It is from this judgment that Appellant now appeals.
Appellant raises the following assignment of error:
 The trial court erred in granting summary judgment to Defendant-Appellee.
 Summary Judgment Standard
We review the grant of a motion for summary judgment independently and do not give deference to the trial court's determination. Schuch v.Rogers (1996), 113 Ohio App.3d 718, 720, 681 N.E.2d 1388, 1389-1390. Accordingly, we apply the same standard for summary judgment as did the trial court. Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413-414.
Summary judgment is proper when, looking at the evidence as a whole (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679,686-687. To make this showing the initial burden lies with the movant to inform the trial court of the basis for the motion and identify those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
Once the movant has satisfied this initial burden, the burden shifts to the nonmovant to set forth specific facts, in the manner prescribed by Civ.R. 56(C), indicating that a genuine issue of material fact exists for trial. Id. at 293. The non-moving party is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66.
Initially, we point out that appellee Milcor moved for summary judgment on four theories; three of which the trial court dismissed as not well taken. The appellant's appeal focuses on Milcor's remaining fourth theory on which the trial court based its grant of summary judgment. We review summary judgment de novo and therefore we will review the four theories presented by Milcor independently of the trial court's determination.
That having been said, we agree with the trial court with respect to two of Milcor's theories and hereby adopt the following conclusions of the trial court: (1) Summary judgment is not warranted on the basis that Luginbihl's claims are preempted by federal labor law on the authority ofLingle v. Norge Div. Of Magic Chef, Inc. (1988), 486 U.S. 399 which states that a state-law claim is not subject to federal preclusion where that claim is independent of the collective bargaining agreement and presents purely factual questions that can be resolved without interpretation of the collective bargaining agreement. (2) Summary judgment is not proper on the theory that Luginbihl failed to establish a prima facie case for handicap discrimination in violation of R.C.4112.02[1] brought pursuant to R.C. 4112.99 since Luginbihl established that there were issues of material fact as to whether or not Milcor could have reasonably accommodated her physical restrictions. With respect to the remaining two theories, we issue our own independent findings below.
Common Law Wrongful Discharge
In its motion for summary judgment Milcor argued that Luginbihl's third claim for relief, common law wrongful discharge in violation of public policy, was barred as a matter of law. We agree.
Generally, Ohio follows the "employment-at-will" doctrine, the identifying characteristic of which is that either the employer or the employee may terminate the employment relationship at any time and for any reason. Mers v. Dispatch Printing Co.(1985), 19 Ohio St.3d 100. InGreeley v. Miami Valley Maintenance Contrs., Inc.(1990), 49 Ohio St.3d 228,551 N.E.2d 981 the Ohio Supreme Court created an exception to the "employment-at-will" doctrine by establishing a cause of action for wrongful discharge in violation of public policy as articulated in a specific statute. Shaffer v. Frontrunner (1990), 57 Ohio App.3d 18, 20. However, in order for an employee to avail herself of a Greely claim, the employee must be an "employee-at-will" and a not party to an employment contract, such as a collective bargaining agreement. Haynes v. ZoologicalSociety of Cincinnati (1995), 73 Ohio St.3d 254. Since Luginbihl, as union member, was a party to a collective bargaining agreement, she was not an employee-at-will and therefore ineligible to bring a Greely
wrongful discharge claim. Accordingly, summary judgment is proper as to Appellant's claim for wrongful termination in violation of public policy.
Preclusion by the terms of the Collective Bargaining Agreement
In its fourth theory as to why summary judgment is warranted as a matter of law, Milcor asserts that Luginbihl's remaining statutory disability discrimination claim is precluded by the arbitration and grievance procedure contained within the collective bargaining agreement between Milcor and the Union. In support of this argument, Milcor offers two "sub-theories." First, Milcor claims that Ohio law prevents Luginbihl from filing a R.C. 4112.99 action prior to the exhaustion of administrative remedies to include grievance procedures within a private employment contract. Second, Milcor asserts that R.C. 4112.14(C), a provision pertaining to age discrimination, prevents Luginbihl from bringing her claims since she was a party to a collective bargaining agreement containing an arbitration clause. We do not find either of these arguments to be well taken.
RC. 4112.99 does not explicitly require the exhaustion of administrative remedies. In Elek v. Huntington Natl. Bank (1991),60 Ohio St.3d 135, 136 the Ohio Supreme Court affirmed the 10th District Court of Appeal's decision that under R.C. 4112.99, an individual may institute an independent civil action for discrimination on the basis of physical handicap even though that individual had not invoked and exhausted his or her administrative remedies. See Elek v. HuntingtonNational Bank (Aug. 24, 1989), Franklin App. No. 88AP-1183, unreported, See also; Carney v. Cleveland Hts.-Univ. Hts. City School (May 29, 2001), Cuyahoga App. No. 78051, unreported; Ward v. Hengle (1997),124 Ohio App.3d 396; Larkins v. GD Searle Co. (1991), 68 Ohio App.3d 746;Vass v. The Riester Thesmacher Co. (2000), 79 F. Supp.2d 853.
Furthermore, in Smith v. Friendship Village of Dublin (2001),92 Ohio St.3d 503 the Ohio Supreme Court clarified the Elek decision stating that a person alleging handicap discrimination has two statutory methods for relief; (1) pursuant to R.C. 4112.05, an aggrieved person may file a charge with the Ohio Civil Rights Commission (OCRC) to pursue an administrative remedy or (2) may alternatively file a civil action in the common pleas court pursuant to R.C. 4112.99. Id at 504-5. Milcor argues that as a union member and a party to a collective bargaining agreement containing a provision for grievance arbitration, Luginbihl had neither of the aforementioned options provided by state law but was required to first exhaust the remedies provided in the collective bargaining agreement.
Milcor's argument presents the compelling issue of whether Ohio law permits an employer and a union to waive or forfeit an individual employee's right to bring a cause of action pursuant to R.C. 4112.99 by merely including a grievance procedure in a collective bargaining agreement. Or, put in more simpler terms, today we explore the issue of whether union members can bring claims against their employers pursuant to R.C. 4112.99 or whether they are they first required to exhaust the remedies provided in their CBA.
In interpreting the Ohio anti-discrimination statutes Ohio courts may look to cases and regulations interpreting federal civil rights legislation to include the federal Americans with Disabilities Act.Columbus Civ. Serv. Comm. v. McGlone (1998), 82 Ohio St.3d 569, 573. InWright v. Universal Maritime Service (1998), 525 U.S. 70, 119 S.Ct. 391
the United States Supreme Court explicitly rejected an employer's argument that an employee's claim under the federal American with Disabilities Act was barred by his failure to exhaust his contractual remedies under a collective bargaining agreement. In making its decision in Wright, the Supreme Court relied on the landmark decision of Alexanderv. Gardner-Denver Co. (1974), 415 U.S. 36, 94 S.Ct. 1011 in which the Court held that an employee does not forfeit his right to a judicial forum for claimed discriminatory discharge in violation of Title VII of the Civil Rights Act of 1964 if "he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." Id at 49, 1011. In Gardner-Denver the Supreme Court reasoned that a grievance is designed to vindicate a "contractual right" under a CBA rather than "independent statutory rights accorded by Congress."Id.
Ohio courts have followed the United State's Supreme Court's reasoning. In Thomas v. General Electric Company (1999),131 Ohio App.3d 825 the First District Court of Appeals held that an employee who was member of a labor union that had a collective bargaining agreement with an arbitration clause specifically providing for the resolution of disputes involving discrimination, was not required to proceed to arbitration first, or even at all, on claims that employer subjected him to racial discrimination in violation of civil rights law. The Thomas court reasoned:
 Labor arbitrators are authorized under a collective bargaining agreement to resolve contractual claims, not statutory claims. Labor arbitrators have developed a body of expertise in labor law. This is why the law presumes the arbitrability of disputes based upon a collective bargaining agreement. This is not, however, the same body of expertise or the same body of law implicated by the civil-rights statutes. Nor are the remedies the same. Id at 830.
Following Gardner-Denver, supra, Wright v. Universal Maritime Service,supra and Thomas v. General Electric Company, supra we hold under Ohio law a union cannot prospectively waive the individual right of a member to select a judicial forum for the resolution of the member's state statutory claims. This means that grievance procedures of both general language and those that speak directly to discrimination cannot prevent an employee from bringing statutory claims, absent language in the relevant statute to the contrary.
Luginbihl properly brought her claim pursuant to R.C. 4112.99 in state court even after she filed a grievance with her union and then abandoned the procedure prior to full exhaustion. While there is strong public policy in favor of pursuing matters through arbitration, Luginbihl's state law discrimination claim is her own and may not be forfeited by her membership in a labor organization.
In its second "sub theory" under the general theory that the grievance and arbitration procedure in the collective bargaining agreement precludes Luginbihl's claims, Milcor asserts that R.C. 4112.14(C) provides the necessary statutory language to require Luginbihl to exhaust the remedies in the CBA prior to bringing suit in a court of common pleas. Milcor's interpretation of R.C. 4112.14(C), which the trial court adopted, has brought forth several amici including the Ohio Civil Rights Commission, the Ohio Civil Rights Coalition, the Ohio NOW Legal Defense and Education Fund, the Committee Against Sexual Harassment, the Ohio Employment Lawyers Association, and the Ohio Academy of Trial Lawyers, all of which argue against that interpretation.
The Ohio Age Discrimination Statute, R.C. 4112.14, provides in pertinent part:
 No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee.
 Any person aged forty or older who is discriminated against in any job opening or discharged without just cause by an employer in violation of division (A) of this section may institute a civil action against the employer in a court of competent jurisdiction. * * *
 The cause of action described in division (B) of this section and any remedies available pursuant to sections 4112.01 to 4112.11 of the Revised Code shall not be available in the case of discharges where the employee has available to the employee the opportunity to arbitrate the discharge or where a discharge has been arbitrated and has been found to be for just cause.
In granting summary judgment to Milcor, the trial court concluded that R.C. 4112.14(C) manifested an intent by the Ohio General Assembly "to preclude a civil suit for any of the remedies under 4112.01 to 4112.11, including handicap discrimination under R.C. 4112.02 when the claimant has an opportunity to arbitrate notwithstanding the heading of R.C. 4112.14
which is `Age discrimination by employers.'"
We agree with the Appellant and her amici that R.C. 4112.14(C) is not applicable to the case at bar nor to any non-age discrimination claim brought pursuant to R.C. 4112.99. The language of the statute is unambiguous. R.C. 4112.14(C) speaks to the cause of action created in R.C. 4112.14(B) and any remedies provided under 4112.01 to 4112.11. Here, Luginbihl is not seeking a remedy under 4112.02 for there is no remedy provided therein. Luginbihl is enforcing the "thou shall not discriminate" language of R.C. 4112.02 through an action brought pursuant to R.C. 4112.99. Nowhere in the language or the interpretation of the statute could it be said that R.C. 4112.14(C) applies to actions brought pursuant to R.C. 4112.99.
Furthermore, a close review of R.C. 4112.01 to R.C. 4112.11 reveals only two remedial provisions to which the literal language of R.C.4112.14(C) could be applied. First of all, R.C. 4112.05(N) provides for the filing of a civil suit for age discrimination in hiring or discharge. Secondly, R.C. 4112.05 provides for the filing of a complaint with the Ohio Civil Rights Commission. By applying the trial court's interpretation of R.C. 4112.14(C) to non-age discrimination claims, all individuals who have arbitration available would be precluded from bringing any discriminatory claim to the Ohio Civil Rights Commission. We cannot rationally conclude that the General Assembly, by tucking a requirement deep within the Age Discrimination Statute, intended to preclude all discriminatory claims to the OCRC where arbitration is available. It is more likely that the General Assembly intended R.C.4112.14(C) to apply exclusively to age discrimination claims.
A review of the legislative history of the Ohio Age Discrimination Statute supports our view. Prior to being incorporated into Section 4112 of the Revised Code in 1995[2], the Ohio Age Discrimination Statute existed as a separate section. Under the former R.C. 4101.17(C) individuals could not bring age discrimination claims to the court of common pleas when arbitration was available. In their amicus brief, The Ohio Civil Rights Commission asserts that "nothing about the recodification of the age discrimination statute suggests that the longstanding statutory limit on age-discrimination lawsuits in Ohio has now been extended to lawsuits involving all other forms of discrimination as well. A simple recodification of the age discrimination statute should not be interpreted as affecting a total statutory change." We agree.
Therefore, it is our holding today that R.C. 4112.14(C) does not apply to Appellant's claim brought pursuant to R.C. 4112.99. Furthermore, R.C.4112.14(C) does not apply to any claim not sounding in age discrimination. Accordingly summary judgment as to plaintiff-appellant Luginbihl's claim for discriminatory discharge in violation of R.C. 4112.02
brought pursuant to R.C. 4112.99 is not proper on these grounds.
Finally, Luginbihl, in both her amended complaint for relief and at oral argument, asserted two actionable claims under R.C. 4112.02; (1) discriminatory discharge and (2) failure to accommodate. Specifically, at oral argument Luginbihl's counsel told this court that Luginbihl could bring a claim for relief pursuant to R.C. 4112.02 notwithstanding whether or not she was discharged, but solely on Milcor's failure to accommodate her disability.
On the contrary, the law does not provide for a separate action for the failure to accommodate. Rather, R.C. 4112.02 states that employers shall not discriminate. The accommodation requirement is found in Ohio Administrative Code Section 4112-5-08(E)(1). Administrative Code provisions are not actionable under 4112.99 and thus, while it is an element to a prima facie case for disability discrimination and therefore a central issue to this case, the failure to accommodate is not a separate claim.
In conclusion, Milcor's motion for summary judgment is granted with respect to Luginbihl's claim for common law wrongful discharge in violation of public policy and her separate claim for failure to accommodate. Summary judgment is not proper on Luginbihl's claim for discriminatory discharge in violation of R.C. 4112.02 pursuant to R.C.4112.99 for there remains an issue of material fact as to whether or not Milcor could have provided reasonable accommodation for Luginbihl's disability.
For the reasons stated it is the order of this Court that the judgment of the Court of Common Pleas, Allen County is AFFIRMED in part andREVERSED in part and REMANDED to that court for further proceedings in accordance with this opinion.
Judgment affirmed in part, reversed in part and cause remanded.
SHAW, P.J., and HADLEY, J., concur.
[1] Ohio Revised Code 4112.02(A) provides: It shall be an unlawful discriminatory practice for any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
[2] Senate Bill 162, eff. 10-29-95